Tbe opinion of tbe Court was delivered by
DUNKIN', Ch.
Tbe Calboun Loan and Building Association is an incorporated institution, and Edwin Welling, one of tbe members of tbe Association, on 17th April, 1853, executed to the said Association a bond, in tbe penalty of ten thousand dollars, conditioned for • tbe payment of five thousand dollars, in monthly instalments of fifty dollars each, and, to secure tbe payment of tbe bond, executed a mortgage of a *174 lot in tbe city of Charleston, at tbe corner of Beaufain and Butledge streets. Tbe mortgage was duly proved and recorded. Some of tbe instalments being in arrear and unpaid, tbe Association, on 13tb May, 1854, filed a bill against Edwin Welling for a foreclosure of tbe mortgage. Tbe defendant was, on tbe same day, served personally by tbe sheriff with a copy of tbe subpoena ad respondendum,. No further proceedings were bad until 11th February, 1856, when an order pro, confesso was taken, and tbe cause docketted.
Tbe case was referred to tbe Master, to ascertain tbe amount due on tbe defendant’s bond. This order of reference was taken on 19th February, 1856, and on 4th March, 1856, tbe report of tbe Master was made and confirmed, and a decree of foreclosure entered, by which it was directed that tbe premises should be sold by tbe Master, and that tbe proceeds should be applied to tbe satisfaction of tbe amount reported to be due, and any surplus be paid to tbe defendant, tbe mortgagor.
During tbe interval between tbe filing of tbe bill by tbe Association, and the decree of foreclosure, to wit, on 24th May, 1854, Edwin Welling confessed a judgment to William J. Bennett, tbe plaintiff in this cause, to indemnify him against certain liabilities assumed in bis behalf. On this judgment a fieri facias bad been issued, and lodged to bind. But Welling becoming unable to meet bis various engagements, this property was levied upon under other executions, and was sold by tbe sheriff on 6th August, 1855. At this sale tbe plaintiff, William J. Bennett, became the purchaser, at tbe sum of three thousand five hundred dollars. Of this sum, two thousand five hundred dollars was applied to tbe discharge of executions older than that of tbe plaintiff, and tbe surplus towards payment of bis own execution, leaving a large balance due thereon. At tbe same time, tbe plaintiff took from tbe sheriff a conveyance of tbe premises. About two months after this transaction, to wit, on 8th October, 1855, *175 Edwin Welling was admitted to tbe benefit of tbe Insolvent Debtor’s Act, and E. DeTreville, Esq., was appointed assignee;
On lOtb April, 1856, tbis bill was preferred by tbe plaintiff against tbe Calboun Loan and Building Association, and Edwin Welling, and bis assignee, E. DeTreville. It is alleged, in substance, that before tbe plaintiff consented to assist Ed-, win Welling with bis name, be caused an inquiry to be instituted, through bis solicitor, relative to tbe incumbrances upon bis property; that be was apprised of tbe mortgage to tbe Calboun Association, bat “ was given to understand that there “ never was more than three thousand six hundred dollars “ due thereon, and that tbis bad been reduced by payments “to about twenty-four hundred dollars.” He avers that be' was not aware, nor does be believe bis solicitor was aware, When be took tbe judgment, that proceedings were then pending for tbe foreclosure of tbe mortgage to tbe Calboun Association ; “ but that, soon*afterwards, his solicitor was informed “by Welling, that a bill bad been threatened or filed, but “ that be bad stopped it by some adjustment or payment of “ tbe debtand that be (tbe plaintiff) beard no more of it until 8th March, 1856, when be discovered that tbe decree of 4th March bad been entered. Tbe prayer of tbe bill is (among other things), that tbe decree of 4th March, 1856, may be declared to be irregular, and not binding upon tbe plaintiff as to tbe lot at tbe corner of Butledge and Beaufain streets, as tbe plaintiff was not a party thereto, and, at tbe time of tbe order pro cmfesso, there was no bill or suit pending, but tbe same was discontinued by force and operation of law, for want of prosecution; that tbe mortgage executed to tbe Calboun Loan and Building Association may be declared null and void, because, at tbe time when Welling was admitted to tbe benefit of tbe Insolvent Debtor’s Act, to wit, 8th October, 1855, tbe Calboun Association did not render, on oath, an account of tbe amount due, and also make oath of tbe validity of their mortgage; and that, in any event, only *176 so much may be allowed on said lien as is actually due after tbe payments bave been deducted.
Tbe Chancellor, at tbe bearing, ordered that tbe decree of foreclosure, in tbe case of tbe Oalboun Loan and Building Association against Edwin Welling, rendered February Sittings, 1856, should be set aside and vacated, on tbe ground that, “at tbe 'time tbe order pro confesso was taken, tbe case “ was out of Court, and that there was, at that time, no suit “ pending in which any order or decree could be taken against “tbe defendant, Edwin Welling.” It was also declared, that as tbe Calhoun Association “ bad instituted no proceedings “in tbe Court of Law to prove their debt and foreclose their “mortgage, but prosecuted their suit in equity to a decree, “ tbe mortgage bad thereby become a nullity,” according to tbe provisions of tbe Insolvent Debtor’s Law.
Before discussing tbe doctrines announced in tbe decree, it may be well to consider tbe relative rights of tbe plaintiff and tbe Calhoun Loan and Building Association. On 24th May, 1854, tbe plaintiff undertook to assist tbe defendant, Edwin Welling, with a full knowledge of tbe existing mortgage to tbe Calhoun Loan and Building Association. He was given to understand, as be alleges, that, at tbe time, only about two thousand four hundred dollars were due on tbe mortgage. On 6th August, 1855, tbe plaintiff became tbe purchaser of tbe mortgaged premises, sold by tbe sheriff under executions against tbe mortgagor, Welling. What passed to tbe purchaser, at such sale, has been settled for tbe last thirty-six years by repeated adjudications. Tbe purchaser “takes “ the land subject to tbe lien of tbe mortgage. He takes all “that tbe mortgagor possessed.” Ux parte City Sheriff.,1 McO. 399. “Under tbe A. A., 1791, tbe right of tbe mort- “ gagor is a legal one, may be levied on and sold, and tbe “ purchaser takes tbe place of tbe mortgagor.” State vs. Laval, 4 McC. 336. Tbe plaintiff paid tbe amount of bis bid, and took tbe sheriff’s conveyance. He became, thereby and *177 thenceforth, the proprietor of all the rights in the land of the defendant in the execution, or of his creditors, and subject only to the lien of the mortgage. If no judgment had at that time existed against the defendant, E. Welling, and he had conveyed the premises in fee to the plaintiff, for valuable consideration paid, the relative rights of the plaintiff, and of the Calhoun Association, would have been precisely as they now exist. From the moment of the sheriff’s sale, the creditors of Welling ceased to have any interest in the premises. Their agent, the sheriff, had conveyed their interests to the purchaser, and his money had been applied to the satisfaction of their demands in the order prescribed by law.
Under these circumstances, and occupying this position, the. plaintiff has filed his bill to vacate the decree of foreclosure. It is not suggested that, as a bona fide purchaser from the mortgagor, pending a bill for foreclosure, the plaintiff in the bill was bound to make him a party defendant. The authorities cited in the argument (and none more strongly than Sedgvñch vs. Cleaveland, 7 Paige, 290, adduced by the plaintiff’s solicitor) show the contrary. It was the voluntary act of the plaintiff to become the purchaser at sheriff’s sale, as •much as if he had bought directly from the mortgagor, and in such case he cannot be permitted to defeat the complainant’s rights or delay their proceedings by his purchase pen-dente lite. “ He has no right to be heard,” says the authority, “ unless he brings himself before the Court by a supplemen- “ tal bill, in the nature of a cross bill; which he .may do to “ protect his rights.”
He knew of the mortgage. He is presumed to have known of the pending litigation to enforce it. He occupies in no respect the condition of an involuntary trustee or assignee of a bankrupt, under the Insolvent Debtor’s Law, and the- distinction is pointed out and recognized by the Chanceller, in Sedgwiclc vs. Cleaveland.
The plaintiff prevailed in his application to vacate the *178 decree, in the case of the Association against Welling, on the ground that, at the time when the order pro confesso was taken, no suit was pending against the said defendant in that cause. So much of the Acts of 1784, 1789 and 1810, as relates to this subject, was manifestly intended, as is suggested in the principal Act, to dispatch business in the Court of Chancery, and to prevent unnecessary delay on the part of suitors. "With this view it is declared, in the Act of 1784, that every petition or suit “ shall be finally decided within one year after “ the same shall have been preferred or instituted,” unless upon cause shown, and in the manner therein specified, the Court shall think proper to extend the time not exceeding .one year longer (or two years from the institution of the suit), for the determination of the suit. The Act of 1789 authorizes the extension of this period to three years; and, by the Act of 1810, the Court is “authorized to continue any cause, “ depending in the said Court, for a longer period than three “ years by consent of parties; and, without such consent, on “good and sufficient cause shown, in any case where any “ decretal order shall have been pronounced, within the term “ of three years from the time of filing the bill.”
This Court is well satisfied with the observation of Chancellor Harper, in Jeannerett vs. Bedford, Rich. Eq. Cases, 469, that, according to the uniform practice of the Court, the cause is not regarded as ipso facto out of Court, although these directions may not have been strictly observed. It is not declared by the Act, that if the cause be not decided within that time it shall be ipso facto at an end and out of Court. The law of 1784 directs the cause to be “finally decided” within one year, unless for satisfactory cause shown. Under that Act, a party defendant might have had the bill dismissed for want of prosecution, unless for satisfactory cause shown to the contrary; or it would have been in the power of the Court, of its own motion, and after the cause was docketted, if the parties delayed their proceedings, to strike off the cause, *179 or make suck order as -would be a final decision; or it might refuse to proceed further against the defendant, or might set aside a decree improvidently entered against him. But these directions of the Act should be, and have been, always construed to subserve the purposes of justice, and not to take advantage of inadvertence or misapprehension. As is remarked by Chancellor Harper, if such motion be not made by the party defendant, being in Court, this may be held evidence of consent on his part; and, it may be added, that if no order be entered by the Court, it may be inferred that the Court was satisfied that the delay was reasonable. In this case the bill was filed, and the defendant personally served with process on 13th May, 1854. He was then properly in Court. Negotiations took place between the parties, and some payments were made. In the meantime, no motion was submitted on behalf of the defendant. On the contrary, from the statement of the agent of the mortgagees, they were under the impression that he assented to the delay, and that every thing should stand against him as before. On 11th Eebruary, 1856, an order pro confesso was taken, and, after the usual intermediate orders of reference, &c., a decree pronounced on 4th March, 1856. If, on 10th April following (when this bill was filed), a motion had been submitted, on behalf of Welling himself.] to vacate the decree, not on the ground of surprise or other such cause, but under the provisions of the Act of 1784, his case would have been less strong than that of the petitioner in Jeannerett vs. Bedford, which was, we think, properly dismissed. But the Acts referred to were manifestly intended for the parties in the cause. This bill is preferred by one who was no party. It would be of dangerous consequence to permit a third person to inquire into such proceedings, and, because of a supposed unwarrantable lapse in a long litigation, to vacate a final judgment, in which no fraud is alleged, and which the parties themselves have not assailed for irregularity, or to which they may have *180 consented. In a cause which, is reported (Smith vs. Sunt), a bill was filed in 1825, and a final decision not made until 1851. At one stage of the litigation, an order was made for the removal of the cause from Georgetown to Charleston. ' It lost its place on the Georgetown docket, and was not placed on the Charleston docket for two or three years. It was at length placed on the latter docket, and earnestly prosecuted, and not less earnestly defended, until the final decree. Would a creditor of the defendant, or a vendee of part of the property sold after the decree, be permitted to impeach the decree of 1851, because of an intermediate lapse or delay in the proceedings between the original parties, and have the judgment vacated because there was no cause in Court when the decree was made ? Such seems to be the case of the plaintiff, and the character of his application.
But it would avail the plaintiff very little, merely to set aside the decree of March, 1856. The mortgage of the Calhoun Association would still remain in full force, and it would only be necessary for the mortgagees to renew their proceedings for foreclosure. But the decree has further declared, that the mortgage has become a nullity under the provisions of the Insolvent Debtor’s Act. It is impossible to examine these provisions of the law without perceiving that their purpose is to secure the estate of the insolvent debtor for the benefit of his creditors, or of those of them who may be entitled under the assignment, and whose debts are discharged by this act of the law. The severe penalties of the law (amounting to forfeiture) are levelled against secret incum-brances. If they were suffered to be effectual, it might not only deceive creditors inclined to accept the assignment, but would interfere with the successful discharge of the duty of the assignee in making sale of the estate of the insolvent debtor. A mortgagee is therefore required to present his claim, and make oath of the validity of the mortgage and of the amount due thereon. And the assignee is required to pay *181 this amount, in the first place, from the sales of the premises. It is declared, that if the mortgagee shall not appear and make oath, as required, the mortgage shall he deemed fraudulent, &c. Under the provisions of this law, in the case of Porteous ys. Sullivan, 1 McO. 399, the Court held, that the mortgage of a slave, which slave was in the possession of the insolvent debtor, and included in his assignment, was void, because the mortgagee had not pursued the provisions of the Act. In the case now before the Court, the mortgagees, at the time when the insolvent debtor instituted his proceedings, had already filed their bill in this Court for foreclosure of their mortgage. According to the authorities cited in the decree, it would have been incumbent on them to have made the assignee a party defendant to their bill. The validity of the mortgage, as well as the amount due, were subjects already before the proper tribunal for adjudication. It may very well be doubted, whether the penalties of the law were applicable to a mortgage already sub judice, or whether it was intended to withdraw the inquiries in relation to the matter from the tribunal which had cognizance of it, and bind the •assignee by the ex ¡parte oath of the mortgagee; for no provision is made for any further inquiry by the Court adminis. tering the Insolvent Law. But it is unnecessary to solve or to consider this question. These provisions of the Insolvent Debtor’s Law have no application whatever in the case submitted by the plaintiff. On 6th August, 1855 (more than two months before E. Welling was admitted to the benefit of the Insolvent Debtor’s Act), all his right, title and interest in the premises were sold to the plaintiff; the premises were conveyed to him by the sheriff, and, according to the allegations of his bill, have been ever since in his possession. From the time of that sale, it is very clear that neither Welling nor his creditors had any interest in the premises. The value of his interest, whatever it was, was, on 6th August, 1855, paid by the plaintiff, and appropriated to the demands of the credi *182 tors. On 8th. October, 1855, when "Welling took the benefit of tbe Act,-he had no more right to include in his assignment these premises, than to include in it his neighbor’s lot at the other corner of the street. Whether the mortgage to the Calhoun Association was valid or invalid; whether anything, or nothing, or how much, was due on the mortgage, were inquiries which concerned only the Calhoun Association, who held the mortgage, and the plaintiff, who held the fee charged only with what might be due on that mortgage. The plaintiff has, therefore, very properly insisted that the defendant, the assignee of E. Welling under the Insolvent Debtor’s Law, has no interest in the proceeds of the sales if the mortgage should be declared invalid, but that they belong exclusively to him under his purchase at the sheriff’s sales, and he justly repels the pretensions of the assignee, or the creditors, to any participation in such proceeds. If, in May, 1854, E. Welling, for valuable consideration, had conveyed the premises in fee to the plaintiff, with notice of the incumbrance, and, in October, 1855, had been admitted to the benefit of the Act, it is difficult to conceive upon what principle he could include in his assignment the premises of which he had ceased to be the proprietor eighteen months before. This is substantially the relative situation of the parties. The plain intent of the Act is to declare void all secret liens upon the estate of the insolvent debtor, the legal title to which had passed to his assignee, for the benefit of his creditors. These premises constituted no part of the estate of the insolvent debtor, and the title never passed to the assignee. If the mortgage should be declared void, and the assignee attempted to pursue the directions of the Act, by making sale of the premises, he would be a mere trespasser. The Court is of opinion that the mortgage to the Calhoun Association was not invalidated in consequence of the circumstances stated in the decree.
Although the Court has come to the conclusion that the plaintiff is not entitled to relief upon any of the grounds *183 stated, lie may, nevertheless, have claim to aid for other causes, if the allegations of his bill be sustained. He has charged misrepresentation on the part of the mortgagees as to the amount due to them, by which he was misled; and in respect to the defendant, Welling, or his assignee, he would be entitled to a modification of the, decretal order of March, 1856, so far as it directed any surplus to be paid to him.
It is ordered and decreed, that the decree of the Circuit Court be set aside, and that the cause be remanded for further hearing upon the matters involved in the pleadings, and not herein adjudicated.
Johnston and Wardlaw, CC., concurred.
DaRGAN, Ch., dissented.
Decree set aside, and cause remcvnded to Circuit Court,